Our first cases are combined. We've got 523-0212, People v. Fedrick, 523-0213, People v. Quinn, and 523-0214, People v. Patterson. I would note, and I think counsel knows this, we had a case set on last month's docket. It was People v. Abdullah. It's 522-067-4. It essentially is the same issues we're dealing with here today. It's not set today, but I don't know. Ms. Camden, did you write the brief on that one? Yes, I did. Okay. That case, there was private counsel involved, if I recall correctly, and they did not, to my knowledge, file a responsive brief to the state's brief, correct? That's correct, Your Honor. Okay. Again, we're not taking that up today. I just wanted to note that there is a fourth case that is interrelated from St. Clair County, same issues. So, again, they are just somewhat interrelated. And I believe counsel, like I said, we have consolidated all arguments on all these today. Each of you are going to get 15 minutes apiece plus a five-minute rebuttal. Madam Clerk, is there anything else I need to go through before we get started on these cases that you can think of? Okay. Counsel, are you ready to proceed? Yes, Your Honor. Go right ahead. May it please the Court? Counsel? Jennifer Camden, on behalf of the people. Each of these three state appeals is from an identical pretrial dismissal order regarding a charge of aggravated unlawful use of a weapon based on having no FOIA card. I'd like to note that the parties agree that this order was not warranted for failure to state an offense. The issue on appeal is whether dismissal was warranted on due process grounds. And the relevant facts in the three cases are identical. Each defendant was a Missouri resident who had no FOIA card and who was found with a handgun in a vehicle on an Illinois road or street after a traffic stop. Now, in the Holmes case in 2011, the Illinois Supreme Court ruled that a nonresident has a defense to a charge of AUUW based on no FOIA card if he complied with a nonresident exception to the FOIA card act. Now, the defendants argue that the trial court correctly dismissed the charges on due process ground of impossibility because, as Missouri residents, they could not obtain FOIA cards. However, it was possible for those defendants to comply with the nonresident exceptions to the FOIA card act. So under the Holmes case, dismissal based on the ground of impossibility was not warranted. The defendants also are... Pardon? Do you know how many states have adopted what is known as constitutional imperative? I believe it's approximately half, Your Honor. It's 29. So under what the state is prosecuting in these cases, anyone from those 29 states, if they had their firearm carried into Illinois, they would be guilty of aggravated gun lawful use of a weapon. Is that correct? Well, Your Honor, the... They wouldn't have a FOIA card. Beg your pardon? They wouldn't have a FOIA card. Your Honor, a nonresident under the FOIA card act must comply with a nonresident exception to the FOIA card act. And one of those nonresident exceptions, the section 2B10, is that the nonresident has a firearms license or permit issued by the resident state. And in fact, every state surrounding Illinois with the exception of Wisconsin is one of those states, aren't they? I believe that many of them are. Okay. Yes, Your Honor. Well, I'll continue on that line. This nonresident exception to the FOIA card act, it's true that Missouri, the state of residence of these defendants here, like some other states, does not require a license to possess a firearm or require a concealed carry license. But nearly all states still issue those permits, even though about half don't require them. And they issue them because other states either offer reciprocity, concealed carry reciprocity, or in the case of Illinois, offer some other benefit here, the exemption from the FOIA card act for the possessors of those licenses. So because the state of Missouri still issues a concealed carry permit, and the Illinois public court ruled in 2016 that other states' concealed carry permits are licenses to possess firearms within the meaning of section 2B10 of the FOIA card act, and a Missouri concealed carry permit authorizes possession of a firearm within the meaning of that exemption, like the license that issue in the Wiggins case. So would that be a defense if you had Missouri concealed carry? Yes, Your Honor, because then the defendants would have qualified, would have complied with an exemption to the FOIA card act. And under the Holmes case, that would have been a defense to the charge of AUUW based on no FOIA card. The state's response to the defendants' concealed carry act argument is that subsection 40E of the concealed carry act is only an exception to the concealed carry act. And that the defendants remained bound by the FOIA card act when they entered the state of Illinois with these handguns in their vehicles. And that the defendants' argument appears to be that the legislature must have intended subsection 40E of the concealed carry act to create an unstated new exemption to the FOIA card act. But the best indicator of that legislative intent is the plain language of the statutes. And by its plain language, the FOIA card act applies to everyone within the borders of the state. It says no one shall possess a firearm in Illinois without having a FOIA card or complying with an exception to the FOIA card act. And there are several nonresident exceptions. So the FOIA card act continues to bind nonresidents, even after the adoption of the concealed carry act. Now, meanwhile, subsection 40E of the concealed carry act provides that nothing in this act shall prohibit a nonresident from transporting firearms in the state under certain conditions. But I want to focus this court's attention on the fact that so many of the defendants' arguments are premised on their repeated assertions that subsection 40E is a standalone blanket authorization for nonresidents to possess firearms within the state if they fulfill the requirements of that statute. But that underlying premise is inaccurate because subsection 40E is only an exception to the concealed carry act because it begins nothing in this act shall require, meaning nothing in the concealed carry act. The defendants on appeal are not arguing that the words this act there mean anything other than the concealed carry act. So subsection 40E did not override or suspend other Illinois firearms statutes, such as the FOIA card act. And this court should not interpret the words nothing in this act to mean nothing in the FOIA card act or nothing in any act. That's the plain language interpretation of the statutes. And that also goes to the defendants' claims that they were deprived of notice that the FOIA card act applied to them. By the FOIA card act's own plain language, it applied to them. And subsection 40E of the concealed carry act does not say anything different. Now, the defendants note that subsection 40E does not state that FOIA card act compliance is required. And they argue that the state is asking this court to read a new condition into that statute. But that's an example of one of the defendants' arguments that's based on the premise that subsection 40E is a standalone blanket authorization for nonresidents to possess firearms in the state of Illinois. But it doesn't say that. It's just an exception to the concealed carry act. And the defendants aren't charged with AUUW based on a violation of the concealed carry act. They're charged with AUUW based on a violation of the FOIA card act, which continues to bind every person in the state of Illinois, resident or not, who possesses a firearm. I note that the FOIA card act itself contains no exception for nonresidents transporting firearms pursuant to subsection 40E of the concealed carry act or nonresidents from states that do not require licensure to possess firearms. I'd also note that I think it's telling that the legislature explicitly created a separate exception to the FOIA card act for certain nonresident hunters from such states, and that's at section 2B13. So it sounds like the legislature was not considering the fact that many states do not require licensure. But if the legislature had wanted to extend that exception to other nonresidents from such states, such as the defendants at issue in these cases, it would have done so. But it didn't. Instead, section 2B10 continues to state that the exception is for nonresidents who are currently licensed or registered to possess a firearm in their resident state. The defendants here could have complied with that exception. Now, I've mentioned the Wiggins case, and I'd expect the defendants to note that that case, like the Holmes case, does not involve the concealed carry act. Both of them arose from facts that arose before the adoption of that statute. But first, of course, that distinction is another argument based on the defendant's core contention that the concealed carry act authorizes nonresidents to possess guns here, irrespective of any other law. Also, it's true that those cases did not involve the concealed carry act. But the plain language of the Floyd card act, as interpreted by those cases, continues to apply. And the Floyd card act has not been amended to reflect any disagreement with the court's opinions in the Wiggins case or the Holmes case. I don't think the defendants observe in the briefs that the Floyd card act accepts Missouri concealed carry cards in lieu of Floyd cards, but that Illinois has no Missouri concealed carry reciprocity. And they argue that the legislature cannot have intended this claimed conflict. But those features of the Illinois statutes are rational. The Floyd exception applies to a variety of firearms and licenses and permits from all over the state. Sorry, from all over the country. Also, compliance with section 2B10 authorizes possession of firearms here, not concealed carry. A Missouri concealed carry permit holder is not granted concealed carry reciprocity, but that permit would at least allow him to possess a firearm in Illinois without a Floyd card. Indifferent treatment of nonresident licenses is warranted given the greater danger from concealed carry of weapons. That's a harmonious result. And this court should reject the defendant's invitation to find a new and unstated exception for some part of the Floyd card act. I've heard counsel ask a couple of questions. This may go back a little bit. I think you stated that because the defendants would not fall within the concealed carry law, then they would then fall under the Floyd card act, correct? Yes. I don't know if you're aware of this through your research. Anyone with a CCL, concealed carry license, it is imperative that they know if they are going into a state, whether or not that state recognizes the Illinois concealed carry, which is just what you are talking. That is easily found online. It takes about a two-second Internet search to find out. I think you said Missouri does recognize the Illinois concealed carry. Illinois does not. It does not. Illinois does not offer reciprocity. Missouri does. Illinois does not. Okay. So extrapolating on that, if anyone coming through the state of Illinois, if they are going to possess, carry, handle a weapon, have anything in their vehicle, on their purse and whatnot, they are supposed to look and know what the law is, correct? I'm not sure whether that's a duty that would be issued by their own resident states. The Floyd card act, like every statute in the state of Illinois, does apply to everyone who enters the state. Well, again, if I was going to go into a state and take a firearm with me, it would be imperative that I would know how I need to possess it, how I need to transport it. I mean, that may be common sense. I'm just trying to get the groundwork here on the arguments on these people coming into Missouri or coming from Missouri and Illinois and having and possessing and carrying a gun in the vehicle. Yes, sir. So do you see where I'm going with that? Yes. So would you agree with that? Yes, I think so. Okay. Going to the argument regarding the Floyd card exception, the exception says that a person, a non-resident, can have a firearm. It has to be unloaded, encased, correct? That's a different exception to the Floyd card act. That's B-9. Okay. So then maybe I'll get to B-9 in a minute. I'll let you continue then. Sorry. No, that's fine. B-9 says that a non-resident may possess a firearm in the state of Illinois if it's unloaded and encased. And then separately, B-10 says that a non-resident can possess a firearm if he has a home state firearms license. So that would necessarily encompass firearms. That doesn't specify loaded or unloaded, encased or uncased. So that would allow an uncased and loaded firearm as long as the non-resident has a home state license. And I note that there's a synchronicity between that exception in the Floyd card act and subsection 40E of the Concealed Carry Act, that they work together harmoniously in that a non-resident who brings a loaded and uncased and concealed handgun into Illinois but who also has a home state firearms or concealed carry license would necessarily satisfy both the Floyd card act's exception at 2B-10 and the Concealed Carry Act exception at subsection 40E. So the statutes work together in that fashion. But these three defendants did not have a specific license to carry, correct? Correct. Okay. So then would they not fall, try to fall under the, again it's somewhere here, the B-9, correct? They did not argue below that they fell under B-9. Okay. None of them stated that their firearms were cased. Also at least one of them was loaded. So the defendants did not attempt to argue that they would have fit under that exception. So that's not, and the defendants on appeal are not arguing that either. Okay. Thank you. I see that I'm out of time. Go ahead. There's a lot to these cases, so we'll give you a little more time to finish up and we'll see if we have any more questions. Okay. Well, I would love to, I am glad that I got to that point about the harmonious operation of that subsection 40E and the B-10 because they do work, as I say, harmoniously in that fashion. And I'd note that, and I'm borrowing this language from the Wiggins case, that by requiring the defendants to obtain Missouri concealed carry permits to fit within that exception of B-10 and avoid liability under the AUDW statute, the legislature was essentially requiring little more of them than it would require of its own residents to obtain a FOIA card. That's from the Wiggins case, which ruled that it was constitutional to require a non-resident to comply with home state licensure process before allowing him to possess a handgun in Illinois. So for that reason, the defendants have not shown that the FOIA act was unconstitutional as applied to them. Again, the defendants could have satisfied at least two non-resident exceptions if they had chosen to do so. One was the case then unloaded, the other being having a home state concealed carry permit. The defendants in the answer briefs cite the Bruin case and argue that the state's interpretation of these statutes would result in a complete ban on non-residents having the right to possess firearms. But, of course, that right can be regulated, and the Floyd Card Act and the Concealed Carry Act are such regulations, and both of those have been ruled constitutional since the issuance of the Bruin case two years ago. And again, a non-resident following Section B-10 and having a home state permit could also enter the state with a concealed and loaded handgun and keep it in his vehicle. So this doesn't demand a statutory interpretation outside the plain language of these statutes, because the non-resident exception at B-10 allows possession of firearms regardless of whether they are loaded or in cases. I'd also conclude here with one practical observation. Subsection 40E has existed in its current form for more than 10 years since December 2013, and under the defendant's interpretation of it, the residents of some states have been exempted from the Floyd Card Act for more than 10 years, at least while traveling in vehicles. And as the number of states with laws like Missouri's have grown, it's now tens of millions of people that the defendants contend are exempt from the Floyd Card Act, maybe 100 at this point. And the defendants have not said in any portion of any legislative debate, indicating that any lawmaker commented, either pro or con, on this massive exemption that the legislature is alleged to have intended to create, not at the time of its alleged creation and not in the decades since, even during subsequent exceptions, even during the debates on subsequent amendments to the Floyd Card Act and the Concealed Carry Act. This alleged exemption has also gone unremarked on by Illinois courts and federal courts and apparently by the gun safety organization on which the defendants rely in their briefs. So for these reasons and the reasons stated in the people's briefs, this court should reject all of the defendants' arguments and find that based on a plain language interpretation of the statutes, the defendants can be charged with AAUW based on having no Floyd cards, despite claiming compliance with an unrelated exception to a different statute. So this court should reverse the orders dismissing the charges and remand for further proceedings. Thank you, counsel. Before you leave, I just want to make sure. Justice Moore, do you have any questions? No questions. Okay. Thank you. Now I'll leave you to have a talk with your rebuttal. Go right ahead and answer when you're prepared. Good morning, Your Honors. May it please the Court. Opposing counsel. I'm Craig Hansen. I represent the appellees. Excuse me, appellees. Usually I'm on that side. In these cases, Mr. Jamal Frederick, Mr. Jordan Quinn, and Mr. Alvin Peterson. I'm from the Office of the State Appellate Defender. This court may affirm the dismissal of the charge aggravated on lawful use of weapons in the cases below by applying the Firearm Concealed Carry Act's non-resident vehicle exception to the facts of these cases and holding that the legislature intended to create a very circumscribed and limited exception to the requirement that certain eligible non-residents comply with the terms of the Floyd Card Act in those limited circumstances, such as those presented by the facts of this case. The facts in this case, broadly speaking, concern the possession of firearms within the state, specifically the possession of handguns within the confines of a vehicle. Where the Floyd Card Act and the Firearm Concealed Carry Act both regulate the possession of firearms, one broadly, one specifically, they must be read together. And certainly, both acts apply to the facts of this case. As a little bit of background, the legislature created the Firearm Concealed Carry Act in response to a Seventh Circuit court decision, Morview-Madigan, which held that the constitutional right of armed self-defense is broader than the right to have a gun in one's home. And that the Illinois statutory scheme, in effect at the time, prohibited the carriage of firearms outside the home for the purpose of self-defense and thus violated the Second Amendment. This particular holding was recently reiterated in the Bruin decision by the Supreme Court, which recently held that the Second and Fourteenth Amendment both protect and encompass a right to possess firearms outside the home for the purpose of self-defense. I know briefly, during opposing counsel's argument, there was some discussion of a hunting exception. We're not talking about hunting here. We're talking about the barest purpose behind the Second Amendment here, which is self-defense. And while those may be illustrative examples of other exceptions, that's not what we're talking about here. We're not talking about recreational sports. Wasn't that the thrust of the Bruin decision, that our purpose of being able to carry a firearm is self-defense? That was the holding, yes, in Bruin and earlier in Morview-Madigan, that the threat that one might face is perhaps even more acute outside the home. Justice Posner provided some colorful examples in Morview-Madigan to illustrate that point. When it enacted the Firearm Concealed Carry Act, our legislature created a very narrow path for certain eligible nonresidents to travel through Illinois with a concealed firearm in their vehicle. And concealed firearm has been defined by our legislature to have a very specific meaning. It's a handgun. It doesn't have to be loaded or unloaded. It's inside a vehicle, carried on or about a person inside a vehicle. And that's what we're talking about here. The limited exception contained within the Firearm Concealed Carry Act only covers that particular set of circumstances, such as the facts in these cases. When they created that exception for certain eligible nonresidents to travel through Illinois with a concealed firearm in their vehicle, it spoke clearly and with specificity. The effect of this specific and limited nonresident vehicle exception was to create a general exception to the requirement that a nonresident either possess a Floyd card, something they have not been able to do since 2012, or qualify under one of the other requirements specified in the Floyd Card Act. It is generally understood that where the legislature speaks with specificity, such language is controlling over the more general language found elsewhere. Here, where the Floyd Card Act generally requires some sort of registration or licensure, merely to possess a firearm from another state, something that's not offered by any state except Illinois, Massachusetts, and New York, but only in the case of handguns and semi-automatic rifles. But when they speak with very clear specificity, that language is controlling. And they've created an exception there under these limited set of circumstances. Eligible nonresidents in their vehicle in Illinois. The appellees are not arguing that the nonresident vehicle exception acts as some sort of implicit repeal of any exception or any portion of the Floyd Card Act for nonresidents who are licensed and registered to possess firearms in their home state. We're not saying this is a general repeal, an implicit repeal, or anything of that nature. This general requirement may still be good law in the broad variety of circumstances that one might face. A nonresident in possession of a firearm when they're not in their vehicle or the firearm in question is not a concealed firearm. Then that exception certainly applies because the legislature nowhere in either act which regulate the possession of firearms has made any exceptions or spoken at all about that broader requirement contained in the Floyd Act being inapplicable except in this particular set of circumstances. So we're not arguing that that no longer applies or there was some sort of implicit repeal. However, where an eligible nonresident possesses a concealed firearm in his or her vehicle merely while transiting Illinois, the legislature provided a very narrow exception and a specific path for them to do so. Regardless of the general requirement, they qualify for an exception under the Floyd Card Act. I'd like to talk a little bit about the state's reliance on Wiggins and Holmes, those two cases. They appear quite frequently. I discuss them extensively in our brief. But Wiggins and Holmes are two cases that examine both the act of concealed carry and the effect of other states' licenses. These two cases were decided in the case of Holmes before Illinois adopted the Firearm Concealed Carry Act. In the case of Wiggins, the act in question occurred prior to the Firearm Concealed Carry Act being enacted. Wiggins was very clear in their decision that we are not looking at the effect of the Firearm Concealed Carry Act and how that might result in a different analysis. They could not look at the Firearm Concealed Carry Act because it was inapplicable in 2012 at the time of the incident in question. So neither case was decided under a set of laws that are applicable to these cases and the law as it exists today. The analysis in those cases is likewise quite flawed. I know opposing counsel stated that Wiggins decided that the concealed carry licenses or permits issued by other states, that all of them are good in this state. Wiggins has no such holding. Wiggins examined one state's licensing requirements, Texas's requirements for the issuance of a concealed carry permit, and compared those to the FOIA requirements in 2016. The Wiggins case didn't even bother to go back and look at the 2012 FOIA law, which would have allowed the defendant in Wiggins to have a FOIA card. So there's some problems with the analysis there. We're going to look at Texas's requirements. Since then, since 2012 when that incident occurred, and certainly after 2016, Texas has adopted permitless carry. How does that affect the status of the law and the Wiggins analysis of the Texas concealed carry permit? It would seem that there have been some significant changes to the Texas laws concerning the carriage of firearms. As there have been nationwide in the last ten years since we have had the Firearm Concealed Carry Act and the Non-Resident Vehicle Exception in effect. Now, I think Wiggins does it best in that it acknowledges that the Firearm Concealed Carry Act has significantly changed the landscape of firearm regulation in this state. Obviously, we've had some changes in this state since Wiggins was decided, as has there been changes nationwide. And where our laws have not kept pace with the changing nature, where the legislature has relied on the laws of other states to achieve its policy objectives, as stated in the FOIA Card Act, to prevent unauthorized individuals or individuals determined by our legislature who should not have firearms. There's big gaping holes here. The legislature had the opportunity to speak very clearly. They have chosen not to modify their language in the last ten years. And in this case, illustrates perhaps some of those problems. But they did speak clear enough to define a set of circumstances and conditions under which an individual is not required to have a FOIA card. And we believe that those facts are present in this case. I'd like to introduce a couple of hypotheticals. Just maybe they'll answer some of the questions that I'm sure you have. Or at least get us thinking about different applications of this law. We have a resident of Kenosha, Wisconsin, who's driving to Hammond, Indiana, with a loaded handgun under his seat. He has a Wisconsin concealed carry license because Wisconsin requires it. It is not a permitless carry state. And Wisconsin requires you to have a license in order to carry a handgun in public. Indiana is a permitless carry state. It doesn't require any such license. Neither state has any provision in law to register residents or license them merely to possess a firearm, as we do in Illinois through the FOIA system. During the 90 minutes a Wisconsin resident is driving through Illinois, a Chicago police officer initiates a traffic stop for a broken taillight. The driver, a responsible gun owner, alerts the officer that he has a handgun under his seat and presents the officer with his Wisconsin concealed carry permit. Under the law, no problem here. The officer gives the driver a warning and sends him on his way. Alternatively, a resident in Kentucky is driving to Iowa with a loaded handgun under her seat. Both Kentucky and Iowa are permitless carry states. Both offer concealed carry permits, but neither state has any provision in law to license merely the possession of firearms. During the 40 minutes that this person is driving through Illinois, an Alexander County deputy sheriff initiates a traffic stop for, again, for a broken taillight. The driver, believing she is complying with the Illinois nonresident vehicle exception, alerts the officer she has a gun in her vehicle and presents her Kentucky driver's license with her current address. Under the state's interpretation, our Kentucky resident should be charged and convicted of a Class 4 felony which carries a mandatory minimum sentence of one year in prison. Even if the handgun was unloaded, she is still a convicted felon and is now barred from possessing firearms anywhere under federal law. Under our interpretation, her proof of residency in a permitless carry state establishes, absent any other evidence to the contrary, that she fulfills the requirements established by the legislature in the nonresident vehicle exception. For those reasons, we ask this court to affirm the dismissal of the aggravated unlawful use of weapons charges against the three appellees in this case. Thank you. Do you have any questions? Justice Moore? What? I'd like your examples and follow-up on what I was saying about the states surrounding Illinois. Yes, Your Honor. Thank you, Your Honor. We'll move right ahead with your rebuttal. Thank you, Your Honor. The defendants are suggesting ways, I think, that Illinois statutes could be changed, perhaps should be changed, and perhaps will be changed in the future. But this court must interpret the laws as they exist right now and impute to the legislature the intent behind the plain language of those statutes. The defendant notes that the laws in other states have changed, but that's a reason to defer to the legislature's plain language here. In the Wiggins case, perhaps Texas law has changed. But other states, again, do continue to issue concealed carry permits for this purpose, for the purposes of allowing its own residents to comply with the firearms laws of states like Illinois. Let me tell you, if Illinois doesn't recognize that particular state, I mean, let's be honest, Illinois is picking on who they recognize, and Missouri is not one of them, like I said earlier. So how does that come into that thought? Yes, Your Honor. It's true that Illinois does not grant concealed carry reciprocity for most folks and most non-residents who possess home state concealed carry permits. However, Illinois does give the possession of that license the power to comply with subsection B-10, 2B-10 of the Floyd Card Act, which allows possession of a firearm. So these are two different things. The possessor of a home state concealed carry license may not be permitted to concealed carry within Illinois, but is still permitted to possess a firearm in Illinois in compliance with the Floyd Card Act. And that's the difference here. So there is no tension there in that statutory system created by the legislature because these two schemes were intended to extend different rights to residents and non-residents. So that's how to resolve the fact that Illinois doesn't offer concealed carry reciprocity for these non-resident concealed carry licenses. The defendant is urging that the statutes should be read together and reiterates his assertion that Section 40E was intended to create an exception for the Floyd Card Act. But they refer to each other explicitly when that is intended. But here the plain language has to control, and the defendants are pointing to no language in Section 40E signaling that the Floyd Act would not apply to non-residents. Again, by the plain language of the Floyd Card Act, it does continue to apply to residents and non-residents alike. Also in Wiggins, the operative fact was just that the Texas concealed carry permit authorized possession of a firearm. So the minute differences in the licensing schemes were irrelevant to the Wiggins court for purposes of Section B10. The operative fact was that it was a license within the plain language of B10. It was a license that authorized possession of a firearm. Does the court have further questions or anything else it wishes to discuss? I don't have any further. Justice Moore? No. Just as well. All right. Well, thank you, Counsel. Thank you, Your Honor. Obviously we'll take the matter under advisement. We'll issue orders in due course.